UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BOBBI J. STEELE, | : | Case No. 3:15-cv-00342 |
| | : | |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Commissioner Of The Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

**I.     Introduction**

In 2003, Plaintiff Bobbi J. Steele suffered musculoskeletal injuries when she lifted luggage weighing seventy pounds while working as an airport security screener. She has not worked since that time. Her asserted disabilities include pain in her lower back and shoulder, fibromyalgia, osteoarthritis, irritable bowel syndrome, urinary incontinence, and bilateral carpal tunnel syndrome.

Plaintiff presently returns to this Court challenging the Social Security administration's most recent denial (its third denial) of her 2005 applications for Disability Insurance Benefits and Supplemental Security Income. The particular determination Plaintiff challenges—issued by Administrative Law Judge (ALJ) Amelia G. Lombardo— concluded that she was not under a "disability" as defined by social security law. TR 787-803. Plaintiff insists that ALJ Lombardo failed to correctly evaluate the opinions provided

by her medical sources, and she asserts that her treating and examining medical sources' opinions establish she is under a benefits-qualifying disability. She also contends that ALJ Lombardo failed to properly evaluate her credibility. Plaintiff seeks an order reversing the ALJ's decision and awarding benefits to her. And, she emphasizes, "After 10 years of disability litigation, the record adequately establishes Plaintiff's entitlement to benefits." *Id*. at 66.

## II.    Background

ALJ Lombardo observed, "This case has a long procedural history …." *Id.* at 787. Indeed it does. The evidence has been discussed in three decisions by ALJs (including two by ALJ Lombardo) and in two decisions by this Court. Those discussions are incorporated herein by reference, most notably the discussions of the medical records and opinions provided by Dr. John Moore, Dr. Lila Gomaa, Dr. Pietro Seni, Dr. Edward Kinkopf, Dr. Eli Perencevich, and Dr. Gary Hinzman. *Id.* at 16-22, 515-27, 530-563, 804-823; *see also* Doc. #9, *PageID* #s 38-56.

The problems discussed by this Court in both its previous decisions concerned the ALJs' inadequate reasoning at step two of their sequential evaluations. Tr. 556-61, 819-23. In the present case, Plaintiff's contentions point to ALJ Lombardo's reasoning at step four of her sequential evaluation. Before discussing more about the ALJ's sequential evaluation, *see infra*, § III, more must be known about Plaintiff and her testimony before ALJ Lombardo.

As she has throughout her cases, Plaintiff asserts that she has been under a disability starting on September 6, 2003. On that date and continuing through ALJ Lombardo's most

recent decision, Plaintiff's age placed her in the category of a "younger person" under social security regulations. She has at least a high school education, and she can no longer perform her past relevant work as an airport security screener.

The reasons for Plaintiff's inability to work either as an airport security screener or in other jobs were among the topics discussed in her most recent testimony (in December 2013) before ALJ Lombardo. This was the second time Plaintiff testified before ALJ Lombardo, and the third time she testified before an ALJ.

Plaintiff testified that in 2003, she worked as a security screener at the Dayton International Airport. She can no longer work because she has pain all over her body, especially in her shoulder, back, feet, and hands. *Id.* at 974. She has difficulty sleeping because she is a lot of pain. Doctors have mentioned to her that she has severe arthritis. She has been prescribed Naproxen, Flexirel, Trazadone, Cymbalta, and Lidocaine patches. The patches and Naproxen do not really help her pain. She noted, "Nothing really helps the pain. Nothing really helps me sleep." *Id.* at 976. At one point, a physician (Dr. Moore) placed her on "serious" narcotic medications to treat her back pain. Plaintiff explained, "The medicine wasn't helping my pain, so I wanted to stop taking the medicine. And the doctor wouldn't stop, so I stopped on my own." *Id.* at 991. Yet, withdrawal symptoms led her to go the hospital. *Id.* Plaintiff also sees a chiropractor for treatment.

Plaintiff reported that she can walk about ten minutes at a time, stand about ten minutes at a time, sit about thirty minutes at a time. *Id.* at 978. She has trouble using her arms, hands, or fingers. Referring to her left shoulder, she explained, "The shoulder limits me with the reaching and grabbing. And then my arm will go, the whole left arm will go

numb. And the grabbing is from carpal tunnel and just, I drop stuff all the time and can't keep repetitive use." *Id.* She can lift a gallon of milk. She is right-handed. She cannot reach overhead with her left arm due to shoulder pain. *Id*. at 988.

It hurts Plaintiff's feet when she puts them on the floor. *Id*. at 986. She wears splints at night on both her feet. *Id*. at 989. Her hands are very stiff. She explained, "It feels like a rubber band, and then it stretches and it hurts to grab stuff." *Id*. at 986. She has carpel tunnel syndrome in both hands, causing her to drop things she picks up (like a plate). This occurs throughout the day, every day. *Id*. at 990.

It takes her about an hour to wake up and get going in the morning. *Id*. at 986. Plaintiff's back pain feels like "burning, stabbing, tightness, stiffness, just pain." *Id*. at 987. She set her pain level at ten, on a scale of zero to ten (no pain to maximum possible pain). Nothing she does provides relief from her back pain. She "just keeps going until exhaustion takes … over." *Id*.

Plaintiff also experiences about seven accidents per week from irritable bowel syndrome. *Id.* at 989. She has daily urinary incontinence. She takes several medications— Pepto Bismol, Tums, Imodium—for irritable bowel syndrome. These help sometimes. She also testified, "Of course, I have severe acid reflux, that's why I can't hardly talk." *Id.* at 979. She takes the "highest" (presumably the "strongest") medication she can for severe acid reflux. *Id.*

As to her activities, she sometimes cooks for her husband and daughter (then, nine years old). Her husband usually loads and unloads the dishwasher. Her husband or older daughters help her by doing the sweeping or mopping, the laundry, vacuuming. Plaintiff

4

does not have hobbies and does not do yard work. During a typical day, she tries to do what she can. She tries to get up when her daughter does, but she succeeds only sometimes. After her daughter catches the bus for school, Plaintiff sits in a chair, watches TV, or lies in bed. She tries to walk, but she has trouble walking in the morning because of pain in her feet, back, and hips. She goes to bed around 8:30 or 9:00 p.m., and tosses and turns due to pain in her feet, hips, left shoulder, and lower back. *Id.* at 984-85. If she is lucky, she will get one solid hour of sleep per night. She ends up napping for about fifteen minutes once a day. *Id.* at 985.

### III.    The ALJ's Decision

Plaintiff's eligibility to receive Disability Insurance Benefit and Supplemental Security hinged on whether she was under a "disability" as defined by social security law. *See* 42 U.S.C. §§ 423(d)(1)(A)-(d)(2)(A), 1381a; *see also Bowen v. City of New York*, 476 U.S. 467, 470 (1986). To determine if she was under such a disability, ALJ Lombardo evaluated the evidence under the Social Security Administration's five-step evaluation procedure. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] Moving through step one, the ALJ found at steps two and three that Plaintiff's impairments—including her severe impairments of "mild lumbar degenerative disc disease and osteoarthritis; left shoulder impingement and residuals of surgery; mild bursitis and degenerative joint disease of the left upper extremity; mild degenerative disc disease of the bilateral ankles; and mild bursitis of the left hip—did not automatically entitle her to benefits. (Doc. #8, *PageID* #s 790-92). At step 4, ALJ

---

[1] The remaining citations to the Regulations will identify Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplement Security Income Regulations.

Lombardo found that the most Plaintiff could do despite her impairments—her residual functional capacity, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)—was light work[2] tempered by the following limitations: "occasional stooping, crouching, kneeling, and crawling; no overhead reaching (above shoulder level) with left non-dominant upper extremity; and the ability to change position for one to two minutes every 30 minutes." *AR* at 792-93.

Given these abilities and limitations, the ALJ found (step four) that Plaintiff could not perform her past relevant work. And, given these abilities and limits plus Plaintiff's younger age, her high-school education, and her work experience, the ALJ determined (step five) that she could perform a significant number of jobs in the regional and national economies. These doable jobs, according to the ALJ, included housekeeping cleaner, folder, and ticket seller. *Id*. at 802. The ALJ's step-five finding dictated that her final determination that Plaintiff was not under a disability and not eligible for benefits. *Id*. at 75-76.

## IV. Standard of Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. § 404.1567(b).

6

findings or by whether the administrative record contains evidence contrary to those findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, resolving whether the ALJ applied the correct legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "(E)ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.  **Discussion**

    A.  **Treating and Examining Medical Sources' Opinions**

Plaintiff contends that the ALJ did not consider the opinions of her treating and examining physicians—Dr. Moore, Dr. Gomaa, Dr. Seni, and Dr. Kinkopf—as required by, or consistent with, the Commissioner's Rules.  (Doc. #9, *PageID* # 59).

7

Social security regulations require ALJs to give the opinion provided by a treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). "Even if [a] treating physician's opinion is not given controlling weight, there remains a presumption, albeit a rebuttable one, that the opinion…is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (internal quotations and citations omitted). This rebuttable presumption requires ALJs to continue weighing treating source opinions under certain factors: the length of the treatment relationship, frequency of examination, specialization of the treating source, supportability of the opinion, and consistency of the opinion with the record as a whole. 20 C.F.R. §§ 404.927(c)(1)-(6); *see Bowen*, 478 F.3d at 747.

The regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions by stating "specific reasons for the weight placed on a treating source's medical opinions …." *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (1996)). The ALJ's reasons must be "supported by the evidence in the case record …." *Id*. The goals are to assist the claimant in understanding the disposition of his or her case and to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.*

Beginning with Dr. Moore's opinion, Plaintiff contends that the ALJ "simply does not understand pain physicians," and that Dr. Moore based his opinions on two years of

8

continuous care and Plaintiff's "consistent complaints of pain and spasms verified by physical examination." (Doc. #9, *PageID* #59).

In February 2006, Dr. Moore reported that Plaintiff has chronic moderately severe low back pain and weakness/atrophy. *Id*. at 178. He estimated that the most she could lift was five to ten pounds. Given this and the other exertional limitations Dr. Moore identified, he essentially indicated that Plaintiff could not work an eight-hour workday. *Id.* at 178-79. The ALJ declined to place controlling weight on Dr. Moore's opinion and instead placed little weight his opinion because "the record contains no medical basis for his limitations." *Id*. at 798. As the ALJ noted, the record did not support Dr. Moore's finding that Plaintiff's lumbar-spine impairments caused her to have even moderate functional limitations. Dr. Moore repeatedly documented mild abnormalities and negative findings when he examined Plaintiff. *See id.* at 181, 189, 193, 197-98, 204. Dr. Moore also suggested that he had also not ruled out the possibility of "malingering," *id.* at 183, even though it appears that he accepted Plaintiff's reports about her level of pain. Dr. Moore provided for several reasons for requesting a test known as "Selective Tissue Conductance." *Id*. at 183, 206. And, he noted (in part), "This test also roots out malingers." *Id*. Although this does not mean that Plaintiff actually was malingering, Dr. Moore's desire to rule out malingering is not fully consistent with his decision to accept Plaintiff's subjective statements. Dr. Moore also noted in December 2005, "MRI doesn't show significant pathology, other than some mild facet arthropathy…." *Id*. at 182. Such findings provide reasonable support for the ALJ's view of the record concerning Dr. Moore's opinions. *Cf. Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (ALJ's decision within his discretion by rejecting treating

9

source opinions as inconsistent with other evidence in the record); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("There was no objective medical evidence supporting Dr. Kriauciunias's assessment that Ms. Jones was limited in her ability to maintain regular attendance …."); *Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1030 (6th Cir. 1990) ("Though claimant's physicians consistently reported Tyra's subjective complaints of pain, he had no underlying neurological abnormalities, atrophy or proportionate loss of sensory and reflex reactions.").

In addition, as the ALJ noted, Plaintiff stopped seeing Dr. Moore shortly after he completed his February 2006 assessment; this suggests a somewhat shorter, or curtailed, treating relationship. (Tr. 177-183, 790-791). The ALJ can reasonably give less weight to an assessment based on a shorter or curtailed treatment relationship. *See* 20 C.F.R. § 404.1527(c)(2)(i) (first factors for weighing medical opinions are "length of the treatment relationship and the frequency of examination").

Plaintiff next contends that the ALJ improperly cherry picked parts of Dr. Gomaa's opinions and reached unwarranted conclusions, particularly about her need for breaks during the workday.

Dr. Gomaa's opinion provided a written report in which she opined that Plaintiff would not be able to return to her former employment. Dr. Gomaa placed a list of restrictions on Plaintiff that included no lifting over twenty pounds, no repetitive lifting, frequent changes in postural activities as needed, and no overhead work. (Tr. 409). Dr. Gomaa also indicated her opinions about Plaintiff's restrictions by checking various lines on a work-capacity-evaluation form. *Id.* at 410. Doing so, Dr. Gomaa opined that Plaintiff

10

needed fifteen-minute breaks every two hours during the workday. This need for such frequent breaks would preclude full-time employment. *See id.* at 151-53.

      The ALJ declined to place controlling weight on Dr. Gomaa's opinions but instead placed some weight on her opinion that Plaintiff could lift and carry no more than twenty pounds. (Tr. 406-410, 799-800). The ALJ viewed this lifting limitation as "consistent with the minimal objective findings and account for the claimant's history of left shoulder surgeries." *Id.* at 799. The ALJ reasonably viewed the objective findings in the record as minimal. Dr. Gomaa's examination, of Plaintiff showed only intact cranial nerves, no use of an ambulatory device, negative straight leg raise, normal joints, normal sensation, normal motor functioning and normal deep tendon reflexes. *Id.* at 406-410. While the ALJ acknowledged that Plaintiff's gait was slow and stiff, she had reduced lumbar range of motion, and some muscle spasm, it was also documented that her MRIs showed only mild abnormalities and no significant degenerative disease. *Id.* at 406-410, 799-800. Moreover, Dr. Gomaa indicated that Plaintiff responded well to medications and that she reported experiencing "good" pain relief. *Id.* at 408, 800. She also experienced an increase in her daily activities after receiving treatment from Dr. Gomaa. *Id.* at 408. This reasonably suggests Dr. Gomaa's treatment was effective. *Id.* at 406-410; *cf. Berry v. Comm'r of Soc. Sec.*, 289 F. App'x 54, 56 (6th Cir. 2008) ("Berry's ability to live independently and perform regular household activities belies her claim that she is totally disabled."). Moreover, Dr. Gomaa thought that Plaintiff had not yet reached maximum medical improvement, an opinion that implies Dr. Gomaa expected Plaintiff to be able to improve and do more with continued treatment. (Tr. 410, 800); *see Eddy v. Comm'r of Soc. Sec*, 506

11

F. App'x 508, 509 (6th Cir. 2012) (ALJ reasonably gave little weight to medical source opinion because records show that treatment had stabilized or improved a claimant's condition).

The ALJ declined to credit Dr. Gomaa's opinion that Plaintiff needed fifteen-minute breaks every two hours. The ALJ found this opinion speculative and unsupported by objective medical evidence. Substantial evidence supports these reasons. Dr. Gomaa reported that Plaintiff's lumbar MRI in 2006 "demonstrated no facal [sic] disc pathology or significant degenerative disc disease"; and her lumbar MRI in 2005 showed, "At least mild facet arthropathy with no significant central or foraminal encroachment seen. No serve root compression." *Id*. at 497. In addition, there are unexplained differences between the restrictions Dr. Gomaa listed in her written report and the more severe restrictions she identified in the one-page, line-checked work-capacity-evaluation form. *See id*. at 409-10. Dr. Gomaa, moreover, did not explain why she thought Plaintiff needed fifteen-minute breaks every two hours. *See id*. at 406-410. This omission was an appropriate reason to discount Dr. Gomaa's opinion. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.")

Plaintiff, turning to Dr. Seni's opinions, argues that the reasons are weak and that the ALJ failed to recognize that Dr. Seni's opinions were supported by an underlying theory (seropositive arthrosis). (Doc. #9, *PageID* # 61). Yet, even assuming in Plaintiff's favor that Dr. Seni's opinions were supported by this diagnosis/theory, substantial evidence supports that ALJ's evaluation of Dr. Seni's opinions. *See Her*, 203 F.3d at, 389-90

12

("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")

The ALJ declined to credit one-time examining physician Dr. Seni's opinions that Plaintiff was limited to sedentary work that involved minimal bending and lifting no more than twenty-five to thirty pounds. *Id*. at 799; *see id*., 958-67. The ALJ correctly recognized that Dr. Seni was not a treating physician but was a one-time examining physician. The ALJ also correctly applied, in Plaintiff's favor, the specialization factor by recognizing that Dr. Seni was an orthopedist "with knowledge of spine conditions." *Id*. at 799. The ALJ then considered this specialization but also considered whether Dr. Seni's opinions were supported by objective signs and findings in the record. This constituted a weighing of factors—specialization versus lack of treating relationship, lack of objective support, and lack of consistency—as required by the regulations. *See* 20 C.F.R. §§ 404.1527(c)(2)-(5). The ALJ also noted that there was an internal inconsistency between Dr. Seni's assessment that Plaintiff could perform only sedentary work but could also lift twenty-five to thirty pounds. Although this was a reasonable basis for discounting Dr. Seni's opinion under the consistency factor, it also revealed Dr. Seni's misunderstanding of social security law, which limits sedentary work to individuals who can lift "no more than 10 pounds at a time …." 20 C.F.R. § 404.1567(a). Consequently, Dr. Seni's opinion was reasonably subject to less weight under the final factor permitted by the regulations. 20 C.F.R. § 404.1527(c)(6) (weight attributable to medical opinion may be influenced by "the amount of understanding

of our disability programs and their evidentiary requirements that an acceptable medical source has ….")

Plaintiff argues that the record tells a far different story than the one ALJ's told in his evaluation of Dr. Kinkopf's opinions, particularly regarding the long-term care Plaintiff has undergone. (Doc. #9, *PageID* #s 61-62).

The ALJ declined to place controlling weight, but instead place little weight, on Dr. Kinkopf's opinions. Dr. Kinkopf completed a functional-capacity-evaluation form. *Id*. at 950-56. He reported that Plaintiff had been his patient since 1994. He diagnosed her with low-back and left-shoulder pain, foot pain in 2009, "reflux and hoarseness in 2003, lumbago, left-shoulder recurrent dislocation, [and] plantar fasciitis." *Id*. at 950. He noted that Plaintiff had significantly reduced range of motion in her lumbar and left shoulder; he checked a line indicating that Plaintiff's pain was severe; he indicated that her impairments lasted or could be expected to last more than twelve months and her prognosis was fair. *Id*. at 950-52. Plaintiff correctly recognizes that Dr. Kinkopf's assessment of Plaintiff's work limitations places her in the sedentary range of work abilities. *Id*. at 953.

Substantial evidence supports the ALJ's evaluation of Dr. Kinkopf's opinions. The ALJ correctly observed that although Dr. Kinkopf had been treating Plaintiff since 1994, he had not seen Plaintiff "in quite some time." *Id*. at 800. The regulations allowed the ALJ to discount Dr. Kinkopf's opinion for this reason. *See* 20 C.F.R. § 404.1527(c)(2). The ALJ also correctly recognized that the Dr. Kinkopf was not a specialist, a proper consideration under the regulations. *See id*. at § 404.1527(c)(5).

14

More significantly, the ALJ correctly recognized that Dr. Kinkopf did not rely on objective test results or examination findings in support of his opinions. *See id*. at 800, 95-56. And, Dr. Kinkopf provided little by way of explanation for his opinions. These reasons constitute a valid basis for not placing greater weight on Dr. Kinkopf's opinions. *See* 20 C.F.R. §404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion…."). Further, the ALJ reasonably found that Dr. Kinkopf's own treatment records do not support the functional limitations he set. *See id*. at 318-376, 599-605, 642-655. This was another reasonable basis for discounting his opinions. *See Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 530 (6th Cir. 1997) (recognizing that the lack of support "by detailed, clinical, diagnostic evidence in his reports" constituted "a valid reason not to credit the opinions of a treating medical doctor."). Dr. Kinkopf's examination notes show only some decreased range of motion in the shoulder. Yet, the ALJ incorporated these problems into Plaintiff's residual functional capacity by way of the lifting limitations and a restriction to no overhead reaching on the left included. The ALJ also noted that the assessment form Dr. Kinkopf completed was brought by Plaintiff during a visit where Dr. Kinkopf documented only subjective complaints. (Tr. 800, 941-57). Without reference to some concomitant objective findings (based, for example, on objective testing or examination findings), the ALJ was permitted to discount Dr. Kinkopf's opinions. *See Driggs v. Astrue*, No. 2:11-cv-00229, 2011 WL 5999036 at *6 (S.D. Ohio Nov. 29, 2011) (Kemp, MJ) ("[A]n ALJ may reject the opinion of a treating source 'where the treating

physician's opinion is inconsistent with [that source's] own medical records.'") (internal citation omitted) (R&R adopted, 2012 WL 204044 (Jan. 24, 2012) (Graham, D.J.)

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source opinions lack merit.

### B. Credibility

Plaintiff contends that the ALJ erred in her adverse assessment of Plaintiff's credibility because she voluntarily stopped taking prescription opiate medications due to another developing medical condition. Plaintiff further argues that the ALJ erred by relying on her daily activities, notably in re-marrying, living independently, and raising her children. The Commissioner maintains that the record is replete with support for the ALJ's credibility finding.

To be clear at the outset, there is no doubt in the record that Plaintiff experiences daily pain. As in many social security cases, the record in this case posed difficult questions to the ALJ: What did the evidence reveal about Plaintiff's pain levels? How credible was Plaintiff when she reported her pain to medical sources and described her pain to the ALJ. Such questions can be vexing, all the more so here where Plaintiff has attempted for years to convince the Social Security Administration that her pain is real, serious—often extreme, and disabling. Because such vexing questions fall first to the ALJ, rather than this Court, the ALJ "has a unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). And, because of this, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference …." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997) (citing

16

*Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987)); *see Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 542 (6th Cir. 2007); *Buxton*, 246 F.3d at 773. However, an ALJ's assessment of credibility must be supported by substantial evidence. *Cruse,* 502 F.3d at 542 (citing *Walters,* 127 F.3d at 531).

Congress has mandated that a social security applicant's subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability…." 42 U.S.C. § 423(d)(5)(A). As a result, Plaintiff's testimony and reports about her pain levels and other symptoms, while relevant to determining whether she is under a disability, cannot by themselves establish that she is under a disability. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Credibility assessments are conducted under a two-part analysis:

> First, the ALJ will ask whether there is an underlying medically determinable physical [or mental] impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers,* 486 F.3d at 247; *see also* 20 C.F.R. § 404.1529. When evaluating the intensity, persistence, and limiting effects of a plaintiff's symptoms, the ALJ considers the following factors: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to alleviate symptoms; treatment, other than medication, the plaintiff receives or has received for relief of symptoms; any measures the plaintiff uses or has used to relieve symptoms; and other factors concerning the plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

Plaintiff's reading of the ALJ's credibility analysis is mistakenly limited to the paragraphs the ALJ wrote about Plaintiff's daily activities and her supposed opiate dependence and hospitalization for withdrawal.  *See* Doc. #64, *PageID* #s 64-66.  Before discussing Plaintiff's daily activities, the ALJ evaluated Plaintiff's credibility and found it unsupported by objective medical evidence and by signs and findings documented by Plaintiff's treating and examining physicians.  The ALJ correctly observed that Plaintiff has reported symptoms that are more severe than the pathology shown in a whole body scan she underwent on January 5, 2007; an MRI of her hip on July 23, 2011; an MRI of her lumbar spine in April 2004 ("totally unremarkable); lumbar spine imaging in on May 3, 2005 (slight disc space narrowing at L5-S1); a lumbar spine MRI on May 18, 205 (mild facet arthropathy with no central or foraminal stenosis and no nerve root compromise)l and a repeat lumbar spine MRI on May 22, 2007.  *See* TR 794 (and evidence cited therein).  Substantial evidence also supported the ALJ observation that most of the examinations before Plaintiff's left shoulder surgery were fairly normal and even her "left shoulder pathology in the record shows only minimal findings."  *Id.*  The ALJ provided an accurate review in support of this conclusion, discussing her shoulder orthopedist's (Dr. Vitols') records and a normal left-shoulder MRI on June 14, 2005.  *Id.*  The ALJ also relied on records of Plaintiff's treatment with Dr. Moore documenting that she reported only back pain and generalized joint pain, and records documenting an emergency room visit for pelvic pain on January 3, 2006 (full range of motion in her extremities with no abnormalities).  *See id.* (and evidence cited therein).  The ALJ continued to consider Plaintiff's credibility in this manner, reviewing

18

specific evidence and minimal findings. Substantial evidence supports the ALJ's reading of this evidence and the conclusions the ALJ drew from it concerning Plaintiff's credibility.

It is in this context that the ALJ also considered Plaintiff's daily activities. Plaintiff is therefore incorrect to focus only on the ALJ's discussion of her daily activities as a challenge to the ALJ's credibility findings. And, although there is much to factually disagree with, as Plaintiff correctly does, in the ALJ's view of Plaintiff's prescription opiate withdrawal, the ALJ did not err in considering Plaintiff's daily activities, and the transcript of the ALJ's hearing does not conflict with her observation that Plaintiff "provided very vague testimony about her physical limitations …." *Id*. at 797. The latter finding, moreover, is entitled to great deference because a careful review of her testimony transcript reveals substantial supporting evidence and because the "ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531

Accordingly, Plaintiff's contentions regarding the ALJ's evaluation of her credibility lack merit.

## IT IS THEREFORE ORDERED THAT:

1. The ALJ's non-disability decision is affirmed; and
2. The case is terminated on the Court's docket.

]

March 29, 2017                        *slo/Sharon L. Ovington*
                                                    Sharon L. Ovington
                                                    United States Magistrate Judge